## Stoner v. Lambert

*Myers, Myers & Flower*, for plaintiffs.

*J. Robert Stauffer* and *Nissley, Cleckner & Fearen*, for defendants.

*Weary, Hess & Humer*, for Commonwealth.

JACOBS, J., May 3, 1958.—Plaintiffs have contracted to sell a house and lot of ground situate in Hampden Township, Cumberland County, to defendants. De-

fendants have refused to accept title to the property on the ground that the real estate is subject to the lien of inheritance taxes due the Commonwealth of Pennsylvania on the estate of Elizabeth Gertrude Murray, deceased. Elizabeth Gertrude Murray died seized of the real estate in question on September 29, 1947, intestate, survived by four children as her sole heirs. All the heirs conveyed their interest to one of the heirs by deed dated December 31, 1947, and recorded in Cumberland County in the office of the Recorder of Deeds in Deed Book "T", vol. 13, p. 111. On June 12, 1948, the heir who had become sole owner of the real estate conveyed it to Albert F. Acri and Mabel J. Acri, his wife, by deed recorded in Cumberland County in the said recorder's office in Deed Book "W", vol. 13, p. 33. The Acris were not heirs of Elizabeth Gertrude Murray and were bona fide purchasers for value. The Acris in turn conveyed the real estate on January 6, 1956, to plaintiffs in this action. No inheritance tax was paid to the Commonwealth of Pennsylvania on the estate of Elizabeth Gertrude Murray, and up until the filing of this case stated, on October 7, 1957, no lien for said inheritance taxes had been filed by the Commonwealth of Pennsylvania in Cumberland County. No letters were taken out in the estate of Elizabeth Gertrude Murray, deceased, nor was any inventory or schedule of real estate filed or appraisement made. The court has been asked to determine whether or not the lien of the unpaid inheritance taxes in the estate of Elizabeth Gertrude Murray, deceased, is a lien against this real estate.

This matter first came up for argument in January 1958. At that time the Commonwealth of Pennsylvania was not a party to the action. We were satisfied that the Commonwealth had an interest in the case and on February 17, 1958, directed that a copy of the case

stated be served on the Commonwealth and that it be given an opportunity to appear and argue. The Commonwealth subsequently entered an appearance and filed a brief and the matter was again argued by the original parties and the Commonwealth on April 15, 1958.

Pennsylvania transfer inheritance tax is imposed upon the transfer of property and not upon the property itself: Bute Estate, 355 Pa. 170. However, in order to protect the Commonwealth, it is given a lien against the real estate transferred. This lien is set forth in the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, art. IV, sec. 39, as amended, 72 PS §2443, in the following words:

"The lien of all taxes imposed by this act shall continue until the tax is settled and satisfied, and shall be limited to the property chargeable therewith. All such taxes shall be sued for within five years after they are due; otherwise they shall be presumed to have been paid and cease to be a lien as against any purchasers of real estate."

The Collateral Inheritance Tax Act of 1887 contained a provision in regard to the lien of collateral inheritance taxes, the wording of which was almost exactly similar to the wording of the above quoted Act of 1919. In Estate of Peter Cullen, deceased, 142 Pa. 18, the Supreme Court of Pennsylvania decided that the provisions of the Collateral Inheritance Tax Act of 1887, requiring suit within five years, did not extinguish the personal liability of heirs, devisees and legatees at the end of five years. In commenting on the section of the Act of 1887 which was almost exactly the same as the above quoted provisions of the Act of 1919, the lower court opinion which was adopted by the Supreme Court as its opinion had this to say, on page 19:

"This section is the only one in the act which restricts the right of the Commonwealth to sue. As a matter of the first impression, and without aid from the light which preceding legislation might cast upon its meaning, it would seem that it was intended to quiet the title of purchasers of real estate, by declaring that as to them the tax should be presumed to have been paid and should lose its lien, if suit for its recovery were not begun within the statutory period. This does not imply—it certainly does not affirm—that the personal liability shall not continue. On the contrary, even the lien is discharged only where the land has been sold; if there is no purchaser to protect, both the lien and the debt remain."

The exact question now before us was decided by the Common Pleas Court of Blair County in Commonwealth v. Cherry's Estate, 47 D. & C. 398 (1943). In that case the transfer inheritance tax became due on January 23, 1937, when the life tenant of a tract of real estate died. On July 18, 1938, the remainderman conveyed the real estate to third-party purchasers for value. The transfer inheritance tax not having been paid, the Commonwealth, on January 19, 1943, filed its certificate of nonpayment of inheritance tax. This certificate was not filed within five years after the death of the life tenant, the date on which the tax became due, but it was filed within five years after the transfer to a purchaser for value was made. The court in that case held that the tax not having been sued for within five years after it was due, to wit, January 23, 1937, the tax against the property was presumed to have been paid and ceased to be a lien against any purchaser thereof. The Commonwealth was a party to that case and so far as we are able to determine no appeal was taken.

The tax in question became due when Elizabeth Gertrude Murray died, September 29, 1947: Common-

wealth v. Presbyterian Hospital, 287 Pa. 49, and cases therein cited. More than 10 years have elapsed since the tax became due. The real estate became vested in a purchaser for value on June 12, 1948, and more than nine years have elapsed since that time. In the plain wording of the statute, this transfer inheritance tax, not having been sued for within five years after it became due, has ceased to be a lien on this real estate as against any purchasers.

The Commonwealth contends that the wording of the act that all transfer inheritance taxes must be sued for within five years after they become due or lose their lien against bone fide purchasers of real estate, is limited by the remaining portion of the same section of the act. According to the Commonwealth, the remainder of this section requires that an appraisement of the real estate be filed before the five-year limitation period begins to run. The portion of the section relied on by the Commonwealth provides for the filing of a certificate of nonpayment of the tax by the Commonwealth within the five-year period and within a succeeding five-year period in order to extend the lien of the taxes as against a purchaser for value. The extension of the lien is provided for in the following words:

"Provided, however, at any time within said five year period, if the inheritance taxes on the *realty appraised* are not paid, the Department of Revenue shall have power to file a certificate under its seal, certifying to such non-payment which . . . shall become a lien against decedent's real estate for a further period of five years from the date of such filing . . . if the inheritance taxes on the *realty appraised* are not paid within said further period of five years, the Department of Revenue shall have power to extend the lien for an additional period of five years by filing a certificate in the manner aforesaid": Transfer Inher-

itance Tax Act of June 20, 1919, P. L. 521, art. IV, sec. 39, as amended, 72 PS §2443.

We have emphasized the words "realty appraised" where they appear twice in the above statute because that is the wording relied upon by the Commonwealth.

In our opinion this portion of the section containing the words "realty appraised" has to do only with the creation of a lien for an additional period of time beyond the original five-year protection against sales to purchasers for value. It does not in any way modify or describe or lay down a qualification for the original five-year limitation. If we accepted the Commonwealth's contention that the latter part of this section modified the former part so that taxes do not become due until the realty has been appraised, we would be reversing the well established decisions of our appellate courts that where there is no intervening life estate the tax becomes due on the death of decedent.

It would also mean that the Commonwealth could indefinitely delay the date when the tax became due by not filing an appraisement. As we read the other sections of the Transfer Inheritance Tax Act, it becomes obvious that the word "appraisal" or "appraised" as used in the Transfer Inheritance Tax Act refers to the appraisal made by the Commonwealth. The Act of May 4, 1927, P. L. 727, sec. 1, 72 PS §2324, provides that: "The Secretary of Revenue shall have complete supervision of the making of appraisements in estates of resident decedents." The second section of the same act provides that: "The Secretary of Revenue shall have power to employ such investigators, appraisers and expert appraisers as may be deemed necessary to carry out and enforce the transfer inheritance tax laws": 72 PS §2325. The Act of June 20, 1919, P. L. 521, art. II, sec. 10, 72 PS §2321, states that the duties of appraisers so appointed shall be: "To appraise the

value of the property or estate of which decedent died seized or possessed." The Act of June 20, 1919, P. L. 521, art. II, sec. 13, as amended, 72 PS §2327, states that: "Any person not satisfied with any appraisement of the property of a resident decedent may appeal." It is apparent that the word "appraised" as used in the portion of the statute limiting the lien against purchasers has reference to the administrative act of the Commonwealth which must be performed in order to collect the tax but has no bearing on the date when the tax becomes due.

It might make a stronger case for the Commonwealth if the word "appraised" referred to the action of the executor or administrator in having an appraisal made on behalf of the estate. However, as we have pointed out, the word "appraised" is used throughout the Transfer Inheritance Tax Act in referring to the appraisal made by the agents of the Commonwealth. In the act, when the legislature wished to refer to the duties of the executor or administrator, it required them to file "an inventory or schedule of such property ... whether real or personal." See the Act of June 20, 1919, P. L. 521, art. II, sec. 15, as amended, 72 PS §2351.

In making this decision, we are moved by two considerations. Tax laws are to be construed most strictly against the Government and most favorably to the taxpayer: Arbuckle's Estate, 324 Pa. 501. Secondly, we are of the opinion that the legislature intended by the five-year limitation to quiet title to real estate in the hands of purchasers. The Commonwealth objects that it received no notice through an application for letters or the filing of an inventory and schedule in the estate of Elizabeth Gertrude Murray, deceased. In our opinion the protection of the purchaser of the real estate outweighs this inconvenience to the Commonwealth. The act protects the purchaser only and does

not bar the Commonwealth from proceeding against the heirs.

### Decree

And now, May 3, 1958, at 9 a.m., it is hereby adjudged and decreed that the real estate situate in Hampden Township, Cumberland County, described in the case stated, is free and clear of the lien of transfer inheritance tax, if any, due the Commonwealth of Pennsylvania on the estate of Elizabeth Gertrude Murray, deceased.